**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 20-218 |
| DARRICK WATKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before the Court is Defendant's Motion to Vacate Detention Order, which is opposed by the Government.  (*See* Docket Nos. 401, 466, 481).  After careful consideration of the parties' positions, review of the detention hearing transcript, the referenced Pretrial Services Report, and additional evidence proffered by the parties, (Docket Nos. 401-1, 401-2, 504), Defendant's Motion will be denied.  As required by 18 U.S.C. § 3142(i)(1), the following includes the Court's findings of fact and statement of the reasons for detention.

## I.   BACKGROUND

### A.   PROCEDURAL HISTORY

On August 25, 2020, Defendant and 26 other co-defendants were charged in Count One of the Indictment in this case with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, for conduct occurring from in and around October 2018 until in and around June 2020.  (Docket No. 3).  An arrest warrant was issued for Defendant on that same date.  (Docket No. 32).

After Defendant was arrested in the Central District of California, he had an initial appearance and detention hearing on September 2, 2020 before Magistrate Judge Rozella A. Oliver, who entered an order of detention pending trial, remanded Defendant to the custody of the

1

United States Marshals and ordered that he be removed forthwith to this District for further proceedings. (Docket Nos. 114-4, 114-7, 114-9, 401-2). Following Defendant's arrival in this District, he was arraigned on October 30, 2020 and pled not guilty to the charge. (Docket Nos. 325, 326).

On December 9, 2020, Defendant filed his Motion to vacate the detention order, in which he argues that he should be released pending trial because he is not a flight risk or a danger to the community. (Docket No. 401, ¶¶ 10, 13). In support, Defendant submits that he does not have any prior criminal history or history of failing to appear for court proceedings, and the Court can impose conditions, such as electronic monitoring, to ensure his appearance in this case. (*Id.*). Along with his Motion, Defendant supplied the transcript of the detention hearing before Magistrate Judge Oliver and the Pretrial Services Report prepared in the Central District of California. (Docket Nos. 401-1, 401-2).

On December 22, 2020, the Government filed its Response in Opposition to Defendant's Motion, explaining that this case arises from the investigation of a drug trafficking organization ("DTO") allegedly responsible for distributing more than 100 kilograms of cocaine which was obtained from a source of supply in Mexico and sold by DTO members operating in Pennsylvania, California, Arizona and other states. (Docket No. 466 at 6). According to the Government, Defendant acted as distributor of kilogram quantities of cocaine for the DTO. (*Id.*). The Government argues that Defendant must be detained pending trial because the rebuttable presumption applies in this case based on the charge he faces, consideration of the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of detention, and there is no condition or combination of conditions which will reasonably assure his appearance as required and the safety of the community if he is released. (*Id.* at 10-14). In support of its position, the Government proffered

Case 2:20-cr-00218-WSH   Document 507   Filed 01/05/21   Page 3 of 16

an Omnibus Application and Affidavit for PenTrap Data, Historical and Prospective Cell Site Data and E911/GPS Precise Location Information for eight cellular telephones (hereinafter, "Govt. Ex. 1"). (Docket No. 504). The affidavit dated June 26, 2020 was signed by Special Agent Christopher J. Kline of the United States Postal Service – Office of Inspector General. Based on the information contained in SA Kline's affidavit, United States Magistrate Judge Patricia Dodge issued orders directing disclosure of the requested information.

In Reply filed on December 29, 2020, Defendant reiterates that he is not a danger to the community and any concern that he is a flight risk is ameliorated by his girlfriend's willingness to serve as a surety for him and allow him to reside with her subject to the Court's imposition of an electronic monitoring condition. (*See generally* Docket No. 481).

### B. **EVIDENCE PROFFERED BY THE PARTIES**

According to Govt. Ex. 1, the investigation in this case revealed that the DTO was responsible for trafficking and distributing multi-kilogram quantities of cocaine and shipping drug proceeds from the Los Angeles, California area to the Western District of Pennsylvania and elsewhere through the United States Postal Service ("USPS") and other means. (Docket No. 504, ¶¶ 19, 22). Co-defendant Jamaal Maragh was identified as the DTO's main operative in the Western District of Pennsylvania. (*Id.*, ¶¶ 7, 20). Maragh routinely traveled from this District to Los Angeles where he met with sources of cocaine supply, including co-defendants Manuel Silvestre and Johnny Bravo, who operated in Los Angeles. (*Id.*, ¶¶ 20, 21). Additionally, investigators learned that an unknown male located in Mexico served as another source of supply for the DTO. (*Id.*, ¶ 21).

During the investigation, Defendant and other DTO members were intercepted over Title III wiretaps, and it was determined that they also utilized cellular telephones and other electronic

devices to conduct tracking inquires[1] on parcels mailed through the USPS to and from the Los Angeles area and the Western District of Pennsylvania. (Docket No. 504, ¶ 24). Law enforcement intercepted some parcels which had been the subject of tracking inquiries conducted by DTO members. (*Id.*, ¶ 25). Govt. Ex. 1 contains a chart summarizing information about nine such parcels that were seized by law enforcement, searched pursuant to federal warrants and found to contain large quantities of cocaine, marijuana or United States currency. (*Id.*, ¶¶ 25, 26). The chart specifies the date the parcel was seized, the sender's name, the recipient's name, its contents and the cellular telephone or electronic device which was used to conduct the tracking inquiry. (*Id.*, ¶ 26).

As relevant here, cellular service providers responded to subpoenas and supplied information which enabled law enforcement to determine the particular electronic device that was used to track the various parcels and to identify the individual associated with a specific device. (Docket No. 504, ¶ 29, n.4). Based on that information, agents concluded that Defendant conducted tracking inquiries on parcel # 2, # 4 and # 5. (*Id.*, ¶¶ 26, 29).

According to the chart, Defendant utilized telephone number (909) 516-9992 to track parcel # 2, which was mailed from Pittsburgh to Los Angeles.[2] (Docket No. 504, ¶ 26). Parcel # 2 was seized on January 29, 2019, subsequently searched and found to contain $49,900. (*Id.*). Additionally, Defendant used telephone number (909) 516-9992 to track parcel # 4, which was mailed from Los Angeles to Worcester, Massachusetts, and parcel # 5, which was mailed from

---

1    A "tracking inquiry" is a service that the USPS makes available to its customers so that one who has shipped a parcel through the USPS may locate it through a combination of internet based software and a unique tracking number associated with the parcel. (Docket No. 504, ¶ 24, n.1). When a customer tracks the parcel, the USPS records the internet protocol (IP) address used by the customer which may correspond to a cellular telephone number or other device. (*Id.*). In this case, agents served administrative subpoenas on cellular telephone providers to obtain the telephone numbers which corresponded to the IP addresses used to conduct various tracking inquiries. (*Id.*).

2    Two cellular telephones associated with Maragh also were used to track parcel # 2. (Docket No. 504, ¶ 26).

4

Los Angeles to Tarentum, Pennsylvania, as described in the chart.[3]  (*Id.*).  Those two parcels were seized on May 13, 2019 and May 15, 2019, respectively, later searched and each were found to contain two kilograms of cocaine.  (*Id.*).

In addition to conducting the noted tracking inquiries, in May 2019, agents observed Defendant mailing certain parcels from the Los Angeles area to the Western District of Pennsylvania which were subsequently interdicted by law enforcement, searched pursuant to a warrant and found to contain large quantities of cocaine and marijuana.  (Docket No. 504, ¶ 106).  Agents identified Defendant by comparing his Florida driver's license photograph and the USPS surveillance video of the individual who mailed parcels on May 8 and 9, 2019, and determined Defendant was that same individual.  (*Id.*).

As further detailed in Govt. Ex. 1, Defendant also was implicated in the DTO by intercepted communications and surveillance conducted by law enforcement.  (Docket No. 504, ¶ 107).  For instance, during a call intercepted on February 13, 2020, Maragh advised Defendant that Defendant was going to receive seven kilograms of cocaine from Bravo.  (*Id.*).  In a subsequent intercepted call on that same date, Maragh directed Bravo to deliver the narcotics in the parking garage of Defendant's apartment complex located on S. Kenmore Boulevard in Los Angeles.  (*Id.*).  Shortly thereafter, surveilling agents observed Bravo enter the parking garage in a white Ford van and Defendant exit the elevator and enter the parking garage.  (*Id.*).  Agents next saw Bravo back into a parking spot, exit the van, open the front passenger side door and remove a grey backpack.  (*Id.*).  Bravo then met with Defendant and they entered the elevator.  (*Id.*).  Based on intercepted communications from that time period, agents believe that the grey backpack contained seven kilograms of cocaine which Bravo distributed to Defendant.  (*Id.*).

---

[3]     Co-defendant Clayton Manning also tracked parcel # 4, and Maragh also tracked parcel # 5.

Defendant's connection to the DTO was further shown by a call between Maragh and Defendant intercepted on June 1, 2020, during which Defendant asked Maragh if there were narcotics available for distribution. (Docket No. 504, ¶ 110). After Maragh indicated that there was not, Defendant inquired whether there was a supply drought, to which Maragh replied in the affirmative. (*Id.*).

As noted, Defendant proffered evidence consisting of the transcript of the detention hearing before Magistrate Judge Oliver, background information from the Pretrial Services Report, which will be discussed in detail below, and his proposed plan to reside with his girlfriend in Long Beach, California if released. (*See* Docket Nos. 401-1, 401-2).

After reviewing the detention hearing transcript and considering the Pretrial Services Report, the additional evidence proffered by the parties and their respective arguments set forth in the briefing, the Court concludes, for the reasons detailed here, that there is no condition or combination of conditions which will reasonably assure Defendant's appearance as required and the safety of the community if he is released. As such, his Motion to vacate the detention order is denied.

## II.   <u>LEGAL STANDARD</u>

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings. Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." A district court exercises *de novo* review over a detention order entered by a magistrate judge. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "De novo review does not

require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing." *United States v. Kolonis*, No. 2:20-cr-0146, 2020 WL 5253192, at *3 (W.D. Pa. Sept. 3, 2020) (quoting *United States v. Burgess*, No. 2:09-cr-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009)); *see also United States v. Bastianelli*, Crim. No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) ("The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record."). The Court may incorporate the transcript of the proceedings before the magistrate judge and does so here. *See United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994). The Court "may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings," which it likewise does here.[4] *Burgess*, 2009 WL 2038148, at *1 (citation omitted).

As noted, the availability of pretrial release is controlled by the BRA, which provides that a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the judicial officer must consider the § 3142(g)

---

4       As stated, the Court has reviewed the transcript of the proceeding conducted by Magistrate Judge Oliver, considered the Pretrial Services Report and the additional information and material set forth in Defendant's Motion, the Government's Response and Defendant's Reply, and concludes that a hearing is not necessary because the record has been fully developed.

factors concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies to cases, among others, in which there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq*., for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

A defendant may rebut the presumption in § 3142(e) by producing "some credible evidence

. . . that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light and has been construed as easy to meet.[5] *Chagra*, 850 F. Supp. at 357 (citation omitted). If rebutted, however, the presumption does not disappear but rather "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* at 358 (citation omitted). If the defendant rebuts the presumption, the burden of persuasion remains with the Government. *Id.* at 357. Thus, the Government bears the burden of proving that the defendant presents either a risk of flight or a danger to the community.[6]

## III.  DISCUSSION

Initially, Defendant is charged in Count One of the Indictment with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, which carries a penalty of not less than ten years and up to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(ii). Defendant does not dispute that this charge raises the rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

As Defendant argued at the detention hearing and reiterated in his briefing, he attempts to rebut the presumption by highlighting that he has no prior criminal history, no history of failing to appear for court proceedings, and that conditions can be imposed to assure his appearance.

---

[5]    To rebut the presumption that the defendant presents a danger to the community, "he must come forward with some credible evidence that he will not continue to engage in the drug activities with which he has been charged." *Chagra*, 850 F. Supp. at 358 (citations omitted). This may be accomplished through "'testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation.'" *Suppa*, 799 F.2d at 120 (quoting *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)).

[6]    The Government must prove by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Government must prove by clear and convincing evidence that he is a danger to the safety of any other person or the community. *Delker*, 757 F.2d at 1399.

(Docket Nos. 401, ¶¶ 10, 13; 401-2 at 8; 481 at 3-4).  To illustrate, Defendant proposes that he will reside with his girlfriend in Long Beach, California if released and the Court could impose an electronic monitoring condition.  (Docket Nos. 401, ¶¶ 10, 12; 401-2 at 8; 481 at 3-4).  After reviewing the record, the Court agrees with Magistrate Judge Oliver that Defendant did not introduce sufficient evidence to rebut the applicable presumption.  (Docket No. 114-7 at 2).  Even if Defendant had done so, the Court further concludes that the Government has presented clear and convincing evidence that he is a danger to the safety of the community and has proven by a preponderance of the evidence that he is a flight risk such that pretrial detention was, and is, appropriately ordered in this case.  In reaching these decisions, the Court has conducted an independent examination of the record as a whole and balanced the four factors set forth in 18 U.S.C. § 3142(g).  For reasons that follow, the Court finds that the available information and proffered evidence on each of those factors weigh in favor of detention.

A.   **Nature and Circumstances of the Offense Charged**

The Government submits that this case arises from the investigation of a DTO which was responsible for distributing more than 100 kilograms of cocaine that was obtained from a source of supply in Mexico and sold by its members in Pennsylvania, California, Arizona and other states. (Docket No. 466 at 6).  For Defendant's part, he allegedly acted as a distributor of kilogram quantities of cocaine and associated with co-defendant Maragh, who was the organization's head of operations in the Pittsburgh area.  As a result of Defendant's alleged involvement, he has been indicted on a charge of conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, which is a very serious controlled substance offense.  (Docket No. 3).  If convicted, he faces a statutory mandatory term of not less than 10 years and up to life imprisonment.  In light of this, the nature and circumstances of the offense charged weigh strongly

in favor of pretrial detention.

**B.  <u>Weight of the Evidence</u>**

As a general matter, the Court observes that the weight of the evidence against Defendant is strong, as reflected by the grand jury's return of the  Indictment which establishes probable cause that the offense occurred.  More specifically, while Defendant is presumed innocent of the charged offense, the Government's proffered evidence strongly suggests that he was not only involved in the conspiracy, but he played an important role in the DTO.

As summarized above, investigative techniques, Title III wiretap intercepts and surveillance conducted during the investigation show the following: in January and May 2019, agents intercepted three parcels that had been shipped through the USPS, one containing $49,000 in United States currency and the two others each containing two kilograms of cocaine, which had been electronically tracked by a cellular telephone number that was associated with Defendant; in May 2019, agents observed Defendant mailing certain parcels from the Los Angeles area to this District which were subsequently interdicted by law enforcement, searched pursuant to a warrant and found to contain narcotics; in February 2020, Maragh coordinated with Defendant and Bravo to effectuate the delivery of 7 kilograms of cocaine in Los Angeles; and, in June 2020, Defendant inquired with Maragh whether drugs were available for distribution or whether there was a drought in the supply.  All told, the Government possesses substantial evidence implicating Defendant in the DTO, particularly relating to these events.  In sum, while recognizing that Defendant is presumed innocent of the charged offense, the weight of the evidence against him favors pretrial detention.

## C. **History and Characteristics of Defendant**

As to Defendant's background and characteristics, he is 50 years old, he was born in Jamaica, he is a Jamaican citizen, and he entered the United States on a Visitor's Visa over a year ago.[7]  Defendant's father passed away in 2005, and he reportedly does not maintain contact with his mother and younger brothers, who reside in Jamaica.  Since coming to the United States, Defendant has resided with friends at various locations in Florida and California.  He could not recall his primary address in Florida, but his primary address in California is on S. Kenmore in Los Angeles.  Defendant also could not recall how long he had been moving back and forth between Florida and California.  If released, Defendant proposes to reside at an address in Long Beach, California with his girlfriend, Nicole Louis, (*see* Docket No. 401, ¶ 12), who the Pretrial Services Officer spoke with to verify his background.

Defendant has never been married and does not have any children.  He has been in a relationship with Ms. Louis for two years.  Ms. Louis is employed at a school cafeteria and she is willing to serve as a surety to secure Defendant's release, but she indicated that she has no assets.

Defendant attended secondary school in Jamaica until he stopped in the equivalent of 10th grade.  Since age 18, Defendant has worked off and on at various construction jobs, but he could not recall the name of any employer.  Defendant earned approximately $1,600 per month when he was working, but he was unemployed for several months prior to his arrest because work had slowed down due to the COVID-19 pandemic.  He reportedly makes money from playing cards and dice, but he has no assets and he pays $2,250 for rent.  In view of Defendant's financial

---

7       Defendant's background, residence, family ties, employment history, physical and mental health, substance abuse history and criminal history are set forth in the Pretrial Services Report prepared in the Central District of California.  The Court notes that neither party has objected to the contents of this Report relative to Defendant's background and history.

situation and the lack of stable, legitimate employment, the Court is concerned that he could be tempted to return to the drug trafficking activity with which he has been charged.

Defendant is in good physical and mental health, and he does not have any substance abuse issues. To Defendant's credit, he does not have any prior criminal history. Therefore, it stands to reason that he has never been required to appear for any scheduled court proceedings, which renders moot his argument about having no history of failing to appear for court.

The Court also is not convinced by Defendant's contention that he is not a flight risk because there is no evidence that he would fail to appear if he is released, and, the Court can impose an electronic monitoring condition to ensure his appearance as required. (Docket No. 401, ¶ 10). As discussed, Defendant allegedly was connected with a DTO involving more than 100 kilograms of cocaine and large sums of drug proceeds and, at 50 years old, he is now exposed to a minimum term of ten years' imprisonment. In light of the nature of the charged conspiracy and the substantial penalty Defendant faces if convicted, this Court is not persuaded that any amount of bond or other means of personal supervision would deter him from fleeing. *See Chagra*, 850 F. Supp. at 359-60 (given that the defendant faced minimum term of 20 years' imprisonment on drug conspiracy charge, the conspiracy involved large sums of cash, and evidence suggested that he had contacts in Mexico related to his illegal drug activities, the court was not satisfied that any possible conditions of release would reasonably assure the defendant's appearance, as "[e]lectronic monitoring and other means of personal supervision . . . only notify authorities that the defendant is already fleeing").

As to community ties, it is appropriate to consider whether a defendant has ties to the district where the prosecution is pending. *See United States v. Bucio*, Crim. No. 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (the defendant's lack of any community,

financial, family or employment ties to the district where prosecution was pending weighed in favor of revoking release order); *United States v. Villegas*, No. 3:11–CR–28, 2011 WL 1135018, at *7 (E.D. Tenn. Mar. 25, 2011) ("[A]lthough the defendant has ties with the community in which he lives in California, the defendant has no ties with this District, and the Court may consider this fact.") (citing *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (finding that "community" embraces ties to the community in which the charges are brought and the community in the United States to which the defendant has ties)); *United States v. Rivera*, 90 F. Supp. 2d 1338, 1343 (S.D. Fl. 2000) (observing that a court should consider a defendant's ties to the community in which he faces prosecution). In this case, Defendant has no ties whatsoever to the Western District of Pennsylvania where this case is pending.

The Court recognizes that Defendant has a very limited tie to the Los Angeles / Long Beach, California area where his girlfriend currently resides, but notes that he is a citizen of Jamaica, who is present in the United States on a Visitor's Visa, and he has family ties to Jamaica. Although Defendant reportedly does not maintain contact with his mother and brothers who reside in Jamaica, the Court cannot completely discount that he has close relatives there. Additionally, since coming to the United States over a year ago, Defendant has stayed at various locations in California and Florida, but he could not recall his primary address in Florida or recall how long he had been moving back and forth. In this Court's estimation, Defendant presents a risk of flight, given that he has no ties to this District, he is a citizen of Jamaica and has family ties there, he has an unstable residence, unstable employment and no assets, and he faces a substantial term of incarceration if convicted in this case. Overall, when considering Defendant's history and characteristics, this factor weighs in favor of pretrial detention.

D.  __Nature and Seriousness of Danger to Any Person or the Community if Released__

The final factor requires consideration of the nature and seriousness of danger to any person

or the community if Defendant is released.  As to this factor, the Court recently explained in the

case of one of Defendant's co-conspirators that:

> [it] agrees with others which have observed that drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of a dangerous, addictive drug such as cocaine as alleged to have occurred here.  *See Bastianelli*, 2020 WL 1015269, at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs.").  Distribution of Schedule II controlled substances like cocaine have a "high potential for abuse" and that abuse "may lead to severe psychological or physical dependence."  *See Bastianelli*, 2018 WL 1015269, at *8 (citing 21 U.S.C. § 812(b)(2)(A), (C)). Accordingly, the high volume of cocaine allegedly trafficked in this case presents a considerable danger to the safety of the community.
>
> Ultimately, consideration of this factor requires a court to "*predict* whether defendant will engage in drug trafficking if released pending trial."  *United States v. Bratcher*, Crim. No. 14-28, 2014 WL 1371582, at *8 (W.D. Pa. Apr. 8, 2014) (emphasis in original) (citing *Perry*, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior.").  The Court recognizes, as others have, that strict conditions of release, including conditions such as home confinement and electronic monitoring, cannot guarantee that a defendant will no longer engage in criminal activity.  *See e.g.*, *Bastianelli*, 2018 WL 1015269, at *8 (citing *United States v. Yarbough*, No. 2:14-cr-270-11, 2014 WL 7343839, *4 (W.D. Pa. Dec. 23, 2014) ("If released to home detention, nothing prevents Defendant from continuing to engage in illegal activity.").

*United States v. Araiza-Vega*, Crim. No. 20-218, 2020 WL 6546136, at *8 (W.D. Pa. Nov. 6, 2020).

These observations concerning the substantial risk of harm to the community posed by

cocaine trafficking equally apply in Defendant's case.  Based on the serious nature of the charge

here, along with all of the other factors the Court has considered, the Court finds that the weight

of the evidence is such that Defendant's release on bond would pose a serious risk of his continued drug trafficking activities.  As such, this final factor weighs in favor of pretrial detention.

In sum, after considering the record as a whole, including the nature and circumstances of the serious drug offense charged, the strong weight of the evidence against Defendant, his history and characteristics, the nature and seriousness of danger to the community posed by Defendant's release, and the rebuttable presumption, which retains evidentiary weight, there is no condition or set of conditions which will reasonably assure that Defendant will not engage in drug trafficking while on release pending trial or that he will appear as required.  Accordingly, pretrial detention was, and is, appropriately ordered.

## IV.    <u>CONCLUSION</u>

Given the Court's finding that no condition or combination of conditions will reasonably assure Defendant's appearance as required and the safety of the community if he is released, Defendant's Motion to vacate the detention order will be denied.

An appropriate Order follows.

<u>*s/ W. Scott Hardy*</u>
W. Scott Hardy
United States District Judge

Dated: January 5, 2021

cc/ecf: All counsel of record
           United States Marshal

16